# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

ARGENIS VIZCAYA FARFAN,   )
                  )
      **Petitioner,**      )
                  )
v.                    )      **No. CIV-26-452-R**
                  )
DON JONES, et al.,      )
                  )
      **Respondents.**    )

## REPORT AND RECOMMENDATION

Petitioner Argenis Vizcaya Farfan seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[1] United States District Judge David L. Russell referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. Respondents filed a response, Doc. 11,[2] and Petitioner has replied. Doc. 12. For the reasons set forth below, the undersigned recommends the Court grant habeas corpus relief and order Petitioner's immediate release under the terms of his previous Order of Supervision (OOS).

---

[1]     Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

[2]     No response has been filed on behalf of Jail Director Jones because he is not a federal official. *See* Doc. 11, at 2.

## I.     Factual background and Petitioner's claim.

Petitioner is a citizen of Venezuela who most recently entered the United States on May 19, 2022. Doc. 1, at 5; Doc. 11, Att. 1, at 2; Att. 3, at 1. The Department of Homeland Security (DHS) released him on an OOS on May 24, 2022. Doc. 1, at 5; Doc. 11, Att. 4. Petitioner has no criminal history, has not violated his supervision terms, has purchased a home, and has appeared for regular check-ins. Doc. 1, at 7. He has a valid employment authorization through 2030. *Id.* He was also subject to the Intensive Supervision Appearance Program, which required weekly check-ins and location monitoring. *Id.* at 2 & Att. 2.

The Government granted him Temporary Protected Status (TPS) on February 7, 2024, which ended April 2, 2025, when the program was terminated. *Id.* at 2 & Att. 4. While on TPS, he requested a Reasonable Fear interview on April 23, 2023. *Id.* Att. 6. He also applied for Asylum and Withholding of Removal on February 10, 2025. *Id.* at 2 & Att. 5.

Immigration and Customs Enforcement (ICE) detained Petitioner on February 12, 2026, after he presented for an ICE Check in at the Wichita ICE Field Office. Doc. 1, at 2. On February 19, 2026, DHS conducted a Reasonable Fear Interview. *Id.* & Att. 7. Two days later, Petitioner received a positive decision on his Reasonable Fear Interview and his case was referred to an Immigration Judge under 8 C.F.R. § 208.31(e) for Withholding Only

Proceedings. *Id.* at 3 & Atts. 7, 8.

Respondents point out that on February 15, 2019, Petitioner arrived in Houston, Texas, under a B-1/B-2 visa, ostensibly seeking admission as a tourist. Doc. 11, Att. 1, at 2. He was not allowed entry in part because he had "previously engaged in unauthorized employment in the United States." *Id.* Att. 2, at 1. DHS issued Petitioner a Form I-860 Notice and Order of Expedited Removal and charged him as removable under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) (codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I)). *Id.* Att. 2, at 1, 3; Doc. 1, at 2, 7. So when Petitioner reentered without admission or parole after inspection by an immigration official, DHS issued a Notice of Intent/Decision to Reinstate Prior Order, informing him that DHS intended to reinstate the February 15, 2019 order of removal. Doc. 11, at 3 & Att.3.

Petitioner alleges a violation of his Fifth Amendment Due Process rights because ICE violated its own regulations in re-detaining him and foregoing a custody determination. Doc. 1, at 16. He seeks (1) his immediate release under an order of supervision; or (2) a custody determination hearing where the Government must show by clear and convincing evidence that Petitioner is a danger or flight risk; or (3) hold a custody determination hearing in this Court; and (4) an order enjoining Respondents from moving Petitioner out of this District or the country during this action; (5) a declaration that his re-detention

3

violated his due process rights under the Fifth Amendment; and (6) an award of fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. *Id.* at 17-18.

## II.   Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III.   Analysis.

### A.   Statutory and regulatory framework.

Petitioner argues Respondents violated his Fifth Amendment procedural due process rights when they revoked his OOS and re-detained him without (1) adequate notice, (2) a reasonable opportunity to be heard as to why he should not be detained; and (3) without any showing of a change in circumstances showing that he is likely to be removed in the foreseeable future. Doc 1, at 12-16; Doc, 12, at 1-4. In doing so, he asserts they violated 8 C.F.R.

§§ 241.4 and 241.13.

Petitioner's allegations require the Court to consider the regulations Respondents are obligated to follow in revoking his OOS. *See Saqib v. Andrews*, 2026 WL 350830, at *2 (E.D. Cal. Feb. 9, 2026) ("Because these claims require examination of whether the government followed its own regulations that set out procedures in revoking release, procedures that protect important due process rights, the Court discusses these claims together."), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026); *see e.g., Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023) ("The plain language of the regulation, however, does not allow a court in the first instance to make the required individualized finding. To the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination." (referencing 8 C.F.R. § 241.13)).

Agencies must follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265-68 (1954); *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988)). When a noncitizen has been detained pursuant to a final order of removal, ICE is required to release the noncitizen on an OOS if ICE determines there is no significant likelihood of the noncitizen's removal in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)-(h); *see also Zadvydas*, 533 U.S. at 699-700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

Once DHS releases a noncitizen under an OOS, as they did with Petitioner, the agency may revoke the OOS in two circumstances: (1) for violations of "conditions of release" specified in the OOS; or (2) "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2).

The decision to revoke an OOS on account of changed circumstances must be based on an "individualized determination" that those changed circumstances render removal significantly likely in the reasonably foreseeable future. *See Kong,* 62 F.4th at 619-20 (citing 8 C.F.R. § 241.13(i)(2)). ICE should make this determination based on the following factors:

> [T]he history of the [noncitizen's] efforts to comply with the order of removal, the history of [ICE's] efforts to remove [noncitizens] to the country in question or to third countries, including the ongoing nature of [ICE's] efforts to remove this [noncitizen] and the [noncitizen's] assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of [noncitizens] to the country or countries in question.

8 C.F.R. § 241.13(f). The regulations place the burden to establish changed circumstances on ICE. *See Saqib,* 2026 WL 350830, at *3 ("The regulations at [] § 241.13(i) . . . . indicate that when ICE revokes release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" (quoting *Escalante v. Noem,* 2025 WL 2206113, at *3 (E.D. Tex. Aug.

2, 2025))).

If ICE elects to revoke an OOS, the noncitizen must "be notified of the reasons for revocation of his or her release," and ICE must "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). The "reasons for revocation" that ICE must provide when revoking a noncitizen's OOS cannot be mere conclusory assertions about changed circumstances but must contain specific facts supporting ICE's decision to revoke the OOS.[3] And at the interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future." *Id.* ICE must then consider the contested facts and determine whether revocation of release was warranted. *Id.*

---

[3]    "Courts across the country have repeatedly held that . . . boiler plate language is simply insufficient to give notice under § 241.13." *Ahmed v. Olson*, 2026 WL 836123, at *4 (E.D. Ky. Mar. 26, 2026) (collecting cases).

**B.    ICE violated Petitioner's procedural due process rights by revoking his OOS without following its own regulations requiring adequate notice and the opportunity to respond.**

Respondents do not specify why Petitioner's OOS was originally issued but they agree DHS released him in 2022 under supervision. When DHS re-detained Petitioner they did so not because Petitioner violated any conditions of release or because of changed circumstances justifying re-detention, rather the agency explained it now had "the ability and means to effectuate [Petitioner's] removal." Doc. 11, Att. 6. Based on this statement, it is reasonable to infer that DHS must have determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future before it released him on an OOS in 2022. *See, e.g.*, *Pham v. Bondi,* No. CIV-25-1157-SLP, 2025 WL 3477023, at *3 (W.D. Okla. Oct. 30, 2025), *adopted,* 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025).

"Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" *Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted). Individuals

8

who have been conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). "This is true even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025). And Due Process is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979).

As noted, Petitioner's Notice of Revocation of Release provides no reason for the revocation of his OOS apart from stating that "it is appropriate to enforce the removal order against you as ICE has the ability and means to effectuate your removal." *See* Doc. 11, Att. 6, at 1. But, other than a statement that "ICE is seeking a travel document" to remove Petitioner to Venezuela, it gives no further information on the likelihood of Petitioner's removal in the near future. *Id.*

Respondents had the opportunity to apprise the Court of all facts related to the revocation of Petitioner's OOS when they responded to the petition. They did not provide additional information, and they do not suggest there are any changed circumstances that necessitated the revocation of Petitioner's OOS.

Respondents instead argue that the written Notice of Revocation of Release adequately notified Petitioner of the reasons for the revocation. Doc.

11, at 8 & Att. 6, at 1-2. They maintain that Petitioner received an initial informal interview on February 12, 2026, "promptly after he was returned to custody." Doc. 11, at 9. And they state that during the interview, Petitioner neither made an oral statement, nor provided a written statement or any documentation. *Id.*

In reply, Petitioner argues that ICE did not give him copy of the Notice when it re-detained him, and that Respondents provided his counsel with a copy only during this action. Doc. 12, at 2. He also points out that the Notice is in English, but he does not speak English. *Id.* And, as already described, the Notice specified no reasons or a change in circumstances. *Id.* (citing 8 C.F.R. § 241.4(b)(4)). Petitioner also asserts ICE did not give him *advance* notice of the plan to re-detain him and it has yet to disclose any reason for his continued detention. *Id.* (citing 8 C.F.R. § 241.4((h)(2) and 241.4(d)).

Petitioner continues:

> Despite his signature being requested on the Notice of Revocation Petitioner did not comprehend what document he was signing or that it had any bearing to his re-detention procedures. For Petitioner to have a meaningful opportunity to be heard he would have to first understand what was happening. Petitioner in fact did not understand that 1. That he was being "interviewed". 2. That he could object and 3. That he could present evidence to attempt to prevent his re-detention. Thus, he had no meaningful opportunity to be heard.

*Id.* at 4.

In his affidavit, Petitioner states he appeared "[a]s always" for his check

in. Doc. 12, Att. 1. On February 12, 2026, an officer told him, "in English," that "he was going to be detained." *Id.* Another officer told him he would be taken to Oklahoma at 3pm that same day. *Id.* When fingerprinted, he received the Notice only in the English language, which he does not speak, and stated that no translation or copy was provided to him. *Id.* He states he signed the Notice, but he did not believe it to be related to deportation. *Id.* He was asked questions through an interpreter line about his family and where they lived. *Id.* Officers did not provide him with a copy of the documents he signed that day. *Id.* Petitioner contends he did not voluntarily sign any documents as he was already detained when they were presented to him. *Id.*

Petitioner participated in a "Reasonable Fear" interview in connection with his asylum application while in custody. Doc. 1, at 11. Two days later, the interviewing officer determined that Petitioner had offered credible testimony that he suffered a threat of persecution or torture if he returned to Venezuela. Doc. 11, Att. 7. He has been issued an I-863 and faces the real prospect of many months of further detention before his application for withholding of removal is resolved.[4]

---

[4] Once a reasonable fear determination has been made, the asylum officer "issue[s] a Form I-863, Notice of Referral to an Immigration Judge, for full consideration of the request for withholding of removal only." 8 C.F.R. § 208.31(e). That has occurred in this case and the Immigration Judge denied Petitioner's application for withholding of removal on April 24, 2026. *See* https://acis.eoir.justice.gov/en/caseInformation (last visited May 12, 2026).

The undersigned finds that Respondents failed to comply with ICE's revocation procedures when they re-detained Petitioner after his release on an OOS. *See Pham,* 2025 WL 3243870, at *1 ("ICE[] failed to comply with § 241.13(i)(2) in establishing a change of circumstances that demonstrated a significant likelihood of removal in the reasonably foreseeable future at the time of Petitioner's re-detention. District courts in the Tenth Circuit facing this same issue have found that a failure to establish changed circumstances amounts to a due process violation that justifies release." (collecting cases)).

Respondents do not argue that they gave Petitioner written notification of the reasons for his renewed detention in Spanish or that officials believed Petitioner understood the circumstances of his re-detention. Under § 241.13(i)(3), "[*u*]*pon revocation,* the [noncitizen] will be notified of the reasons for revocation of his or her release," after which the noncitizen will be afforded "an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id* (emphasis added).[5] Though

Petitioner has appealed to the Board of Immigration Appeals which has yet to set a briefing schedule. *Id.* A stay of Petitioner's removal order will remain in effect through the completion of the appeal.

[5]    This requirement of written notice tracks the requirements of another ICE regulation, § 241.4(d), which provides:

A copy of any decision by the district director, Director of the

Respondents state ICE conducted an interview, there is nothing to suggest Petitioner understood he was being interviewed as he did not respond to the questions. The only questions he heard in Spanish focused on his children and family and where they lived.

"The essence of due process is notice and an opportunity to respond." *Roble v. Bondi*, 803 F. Supp. 3d 766, 772 (D. Minn. 2025). But Petitioner "cannot be expected to 'respond to the reasons for revocation stated in the notification' if the notification does not actually *state* any reasons for revocation." *Id.* And the Notice of Revocation of Release Petitioner signed contains no allegation of a change in circumstances or a violation of the conditions of his release in his OOS. *See* Doc. 11, Att. 6.

In sum, Respondents fail to show that ICE made the proper determination when it revoked Petitioner's OOS and the Notice provided to Petitioner did not provide him with the reason behind the revocation of his OOS. *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *8 (D. Md. Aug. 25, 2025) ("[T]he record is clear that ICE's revocation of release violated its own regulations by failing to have an authorized official make the revocation

---

Detention and Removal Field Office, or Executive Associate Commissioner to release or to detain an alien shall be provided to the detained alien.

8 C.F.R. § 241.4(d).

decision, failing to provide [the petitioner] with notification of the reasons for his re-detention, failing to provide [the petitioner] with an informal interview, or some combination of these deficiencies."). Further, the undersigned finds that Petitioner received no notice as required and did not understand he was participating in an "interview" where he was allowed to present evidence.

### C.    Appropriate remedy.

Respondents violated Petitioner's procedural due process rights when ICE ignored its own regulations, depriving him of adequate notice and the opportunity to respond knowingly to any reasons for the revocation. So, the Court must determine the adequate remedy. Under the circumstances of this case, the undersigned concludes the only appropriate remedy is immediate release pursuant to the conditions of Petitioner's previous OOS. *See Pham,* 2025 WL 3243870, at *1 (finding "that Respondents failed to demonstrate changed circumstances justifying re-detention" and ordering the petitioner's immediate release "subject to the terms of his previous Order of Supervision"); *Ahmed,* 2026 WL 836123, at *5-6 (collecting cases granting immediate release where ICE detainees were denied notice under § 241.13).[6]

---

[6]    The undersigned does not address Petitioner's potential remaining argument about the alleged violation of his substantive due process rights under *Zadvydas, see* Doc. 1, at 9-11, because this Report and Recommendation, if adopted, will moot the argument.

## IV.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's request for habeas relief and order his immediate release from custody subject to the terms of his previous OOS. The undersigned further recommends that the Court order Respondents to submit a declaration pursuant to 28 U.S.C. § 1746 affirming that Petitioner has been released from custody within ten business days of the Court's order.[7]

The undersigned advises the parties of their rights to file an objection to this Report and Recommendation with the Clerk of this Court on or before May 18, 2026, in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2).[8] The undersigned further advises the parties that failure

---

[7]    To the extent that Petitioner may be entitled to EAJA fees and costs as a prevailing party, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja,* 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention").

[8]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in this matter.

**ENTERED** this 13th day of May, 2026.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE